### MANLEY et al. v. POOL et al.

No. 15658—Opinion Filed May 4, 1926.

**1. Covenants—Effect in Deed.**

The covenants in a deed are not that illegal or fictitious claims shall not be set up against the premises conveyed, but that no legal claims exist against them.

**2. Same—Breach of Covenant for Possession — Defense — Party in Possession Without Color of Title.**

In a suit for damages based on failure to obtain possession of premises conveyed by warranty deed, where the defendants aver that the party in possession was holding over without color of title, it is reversible error for the court to refuse to permit

defendant to offer proof tending to establish such defense.

### 3. Same—Elements of Damage.

In an action for breach of a covenant against incumbrance, consisting of an unexpired lease, plaintiffs are not entitled to recover, as damages, sums paid for rent of premises occupied by plaintiffs, nor for expense incurred for feed for team and milch cow, during the time plaintiffs were deprived of possession of the premises sued for.

(Syllabus by Jones, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; James I. Phelps, Judge.

Action by N. B. Pool et al. against James C. Manley et al. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

Pearson & Baird, for plaintiffs in error.

Shirk, Danner & Mills, for defendants in error.

Opinion by JONES, C. This action was instituted in the district court of Oklahoma county by the defendants in error, as plaintiffs, against the plaintiffs in error, as defendants, to recover damages alleged to have been sustained by plaintiffs by reason of the failure of the defendants to deliver possession of a farm, consisting of 80 acres of land. to the plaintiffs according to the terms of the contract of sale and the 'deed of conveyance.

The defendants, in their answer to plaintiffs' petition, aver that failure to secure possession on the part of the plaintiffs was not the fault of defendants; that the tenant, who refused to vacate and give possession to the plaintiffs, was a trespasser, and was holding over under no valid lease or contract from defendants, and further aver that defendants agreed to pay the expense of an unlawful detainer suit if plaintiffs would institute same in their name for the purpose of securing possession of said property.

Plaintiffs in their petition, aside from the alleged damages sustained based upon the rental value of the premises, set up certain items of special damages based upon the expense of keeping and feeding their milch cow and team, which they aver that they purchased for the purpose of keeping and using on the farm during the year, which farm they failed to obtain possession of, and aver that they were damaged in the sum of $20 per month, feed for said cow and team.

On the trial of the case to the court and jury, judgment was rendered in favor of the plaintiffs and against the defendants for $398.35, from which the appellants prosecute this appeal, and set forth various errors in their assignment of error, but we deem it unnecessary to take notice of all of the errors assigned and contentions urged, and will only discuss such propositions presented as we deem vital to the issues here involved.

The third proposition urged by plaintiffs in error is the error of the court in refusing to permit the defendants, upon the trial of the case, to show that the tenant in possession of the farm, during the year of 1922, was holding over, without color of title, and in refusing to permit de.endants to show that the plaintiffs refused to dispossess such tenant at the expense of the defendants. The plaintiffs in their petition allege that the tenant was the tenant of the defendants, and refused to permit plaintiffs to take possession during the entire year of 1922. We think the question here raised was very material, and that the trial court was in error in sustaining objections to the evidence offered tending to establish the averments of the defendants' answer in this particular.

It is apparent from the record that the defendants had, prior to the institution of this suit, brought a suit in the justice court to dispossess the tenant holding over, and that the suit was dismissed by the justice of the peace upon the theory that the plaintiffs in that case, defendants in this case, were not the proper parties to maintain the suit, and that same should be maintained or instituted by the plaintiffs in this case. The defendant, when on the stand, was asked, "Had you agreed at that time to put him in possession if he would let you have his name?" To this question the plaintiffs interposed an objection, which was by the court sustained, and exceptions allowed. Numerous other questions were asked, tending to support or leading up to this theory of the defendants, which were objected to and sustained by the court, and when the plaintiff, N. B. Pool, was upon the stand and under cross-examination, the following question was propounded to him:

"Did Mr. Manley tell you at Purcell if you would bring the action and let him use your name in putting the man out, that he would pay all the expenses and put the man out for you?"

Objected to as being incompetent, irrelevant, and immaterial. Objections were sus-

tained by the court. The defendants then offered to make proof as follows:

"The defendant offers to prove by the admission of this witness on cross-examination, if permitted to answer the question propounded, that he will admit that Mr. Manley brought suit to oust the tenant and the justice held he was not the proper party plaintiff, and Pool was the only man that could put him out, and he told Pool at that time, 'If you will let me use your name, I will pay all the expenses in the justice of the peace court, and if you want the man out,' and this witness, being the plaintiff, responded, 'I am not interested,' and will, if permitted to testify, state, from that statement to the time when this suit was filed, he never said another word about possession of the property."

Objections were sustained by the court to the tender.

The contention of the appellants is that the warranty clause in the deed against all incumbrances is not a warranty against the wrongful claim of a tenant holding over; in other words, a warranty only warrants against a valid outstanding lease or interest of some character, and that, in fact, the wrongful claim of a tenant who attempts to hold over without color of title is not an incumbrance such as is contemplated by law. This, we think, from the facts disclosed by the record in this case, was a material issue, and the defendant should have been permitted to make proof of whether or not the tenant was holding over without color of title, and under no lease contract with the defendant, and if this fact had been established, it would constitute a defense to plaintiff's cause of action.

In the case of Noyes v. Rockwood, 56 Vt. 647, the Supreme Court of Vermont, in passing upon a similar question, announced the following rule in the first paragraph of the syllabus:

"It is no defense to a note given for real estate occupied by a lessee, who illegally refuses to surrender possession; as the covenants in a deed are not against fictitious claims."

And in the body of the opinion we find this language:

"The covenants in a deed are not that illegal or fictitious claims shall not be set up against the premises conveyed, but that no legal claims exist against them."

In 7 R. C. L. page 1137, section 51, under the title "Covenants," the following statement is found:

"A prior lease made by the grantor is an incumbrance within the legal meaning of that term, and this is the rule notwithstanding the fact that the purchaser had actual knowledge of the lease. But where a grantee, knowing the existence of a lease on premises conveyed to him, accepts the lease, and the tenant attorns to him, the existence of the lease is not a breach of covenant against incumbrances."

This is the rule that seems to be relied on by appellee, but the fact that a valid lease is declared to be an incumbrance does not indicate that a claim or right set up, that has no foundation, by a mere trespasser, would constitute such an incumbrance as is contemplated in the warranty; hence we are inclined to the opinion that the trial court was in error in sustaining the objections to the introduction of evidence tending to establish the fact that the tenant was in fact not the tenant of the grantor, but was merely a trespasser, holding over without color of title.

The next proposition urged that we deem necessary to mention is the error of the court in admitting certain evidence over the objections of the defendants in the trial court, tending to establish the damages alleged resulting from the expenses incurred for the upkeep or care of the plaintiffs' milch cow and team, during the year of 1922. The evidence discloses that the plaintiff testified that the cost of the feed for his two mules and the cow was $20 per month, and the court submitted this question to the jury by its instructions, and we assume that the jury took this element of damage into account in arriving at its verdict, because the judgment rendered is far in excess of the rental value of the property, as disclosed by the record. There might be conditions under which the plaintiffs in a case of this character would be entitled to recover expenses incurred, by reason of feeding a team, but we can conceive of no theory under which he could recover damages for the care and feed of his milch cow, by reason of the breach of the contract which prevented him from obtaining possession of real estate. This is not a proper element of damages, and, furthermore, the evidence discloses that the cow was a very valuable milch cow, giving from three to four gallons of milch a day, and that the plaintiffs sold all of the milch not used by them and their son, at 20 cents per quart, and how one could sustain any damage by reason of the keep of a cow of this character, we cannot understand, and clearly the court was in error in permitting evidence of this character, and in submitting this question to the jury.

Another element of damages complained of by the appellants is based on the rental value of the premises occupied by the plaintiffs during the year, which they allege they were forced to rent by reason of the fact that they were unable to secure possession of the premises purchased from the defendants. We do not understand this to be a correct or just measure or element of damages in cases of this character. As a general rule, the rental value of the premises, which the plaintiffs are entitled to possess, is the correct measure of damages. This may be increased or added to by reason of special and peculiar circumstances, but in no event should the plaintiffs be permitted to recover the rental value of the premises which they may be prevented from occupying, by reason of the breach of the contract, and also recover damages based upon the rental value of the premises which they do occupy, during the time that they are deprived of possession.

In the case of Musial et ux. v. Kudlik (Conn.) 87 Atl. 551, we find a very exhaustive discussion of this question, and in the fourth paragraph of the syllabus the following rule is announced:

"Where, in an action for breach of a covenant against incumbrances by the existence of an unexpired lease, it appeared that plaintiffs were thereby prevented from taking immediate possession, and alleged that they had been put to great trouble and expense in obtaining another place of abode, they were entitled to recover the amount expended in moving their goods to the premises under the belief that they would be permitted to take possession when in fact they were refused possession by the tenant and required to move elsewhere."

And the fifth paragraph of the syllabus is as follows:

"The rule that the measure of damages, in an action for breach of a covenant against incumbrances by an outstanding lease, is the fair rental value of the premises while plaintiffs were deprived of their use, applies only in the absence of special circumstances which enhance the damages, but does not prevent the recovery of other items necessarily expended by the grantee directly arising from a breach of the covenant."

And in the tenth paragraph of the syllabus the following rule is announced:

"In an action for breach of a covenant against incumbrances consisting of an unexpired lease, plaintiffs were not entitled to recover as damages the value of the crops which were growing on the land at the time of the breach, nor for the expenses and trouble to which they were put after the date of the writ in seeking for another place to live, nor for sums paid for board and rent until the expiration of the lease when they obtained possession of the land."

We do not understand the rules as above announced to confine the recovery alone to rental value, but they certainly preclude the idea that recovery may be had for living expenses, such as board and rents, and the upkeep of a milch cow. We are therefore inclined to the opinion that the judgment of the trial court should be and the same is hereby reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.

Note.—See under (1) 15 C. J. p. 1235 § 46. (2) 15 C. J. 1297 § 182. (3) 15 C. J. p. 1326 § 230 (Anno).